UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHANTRY QUINNEY and BRANDON RAY, on Behalf of Themselves and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiffs,** | § § | |
| **V.** | § § § | **CIVIL ACTION NO.** <br> **JURY TRIAL DEMANDED** |
| **GOODMAN NETWORKS, INC. and MULTIBAND FIELD SERVICES, INC.,** | § § § § | |
| **Defendants.** | § § § | |

**PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT**

SUMMARY

1. Defendants, GOODMAN NETWORKS, INC. and MULTIBAND FIELD SERVICES, INC. (collectively referred to hereinafter as "Defendants"), failed to pay Plaintiffs and its other Cable Technicians for all of the hours they worked and also failed to pay them appropriate overtime wages when they worked more than forty (40) hours in a workweek as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. As a result, Defendants violated the minimum and overtime wage provisions of the FLSA.

2. Plaintiffs, Chantry Quinney and Brandon Ray, and the similarly situated employees they seek to represent, are current and former employees of GOODMAN NETWORKS, INC. and MULTIBAND FIELD SERVICES, INC. who worked as Cable Technicians within the last three years (hereinafter referred to as the "Class Members").

3. Defendants' pay practices and policies applied not only to Plaintiffs, but also to all

Class Members. Therefore, Plaintiffs bring this suit on behalf of themselves and all other similarly situated Cable Technicians.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331 as this case is brought pursuant to the Fair Labor Standards, Act, 29 U.S.C. § 216(b).

5. Venue is proper in the Southern District of Texas – Houston Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and conduct charged herein occurred in this district.

## THE PARTIES

6. Plaintiff, Chantry Quinney, lives in the Southern District of Texas. Plaintiff was employed by Defendants as a cable technician from approximately 2007 until August 6, 2019. His written consent is attached hereto as Exhibit 1.[1]

7. Plaintiff, Brandon Ray, lives in the Southern District of Texas. Plaintiff was employed by Defendants as a cable technician from approximately 2007 until August 5, 2019. His written consent is attached hereto as Exhibit 2.

8. The class of similarly situated employees consists of all cable technicians who worked for Defendants within the last three years (hereinafter referred to as the "Class Members").

9. GOODMAN NETWORKS, INC. ("Goodman") is a Texas corporation that may be served through its registered agent, Capitol Corporate Services, Inc., 330 Roberts St., Suite 203, East Hartford, CT 06108.

10. MULTIBAND FIELD SERVICES, INC. ("Multiband") is a Delaware corporation that is licensed to do business, and which is doing business, in Texas that may be served through its

---

[1] Quinney was hired by Directech Southwest in 2005. In approximately 2007, Multiband acquired Directech.

registered agent, Capitol Corporate Services, Inc., 330 Roberts St., Suite 203, East Hartford, CT 06108.

## FLSA COVERAGE

11. At all times relevant to this dispute, each of the Defendants has been an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

12. At all times relevant to this dispute, each of the Defendants has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

13. At all times relevant to this dispute, each of the Defendants has had annual gross sales in excess of $500,000.

14. At all times relevant to this dispute, Plaintiffs and the Class Members were employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

## THE FACTS

15. Defendants provide cable installation and repair services for residential and commercial clients.

16. Plaintiffs were hired to work as cable technicians for Multiband (actually, by its predecessor, Directech Southwest). In approximately 2014 – 2015, Multiband changed its name to Goodman; however, Plaintiffs continued to receive paychecks drawn on the account (and bearing the name) of Multiband. Plaintiffs worked for Goodman/Multiband until August 2019.

17. Plaintiffs' primary duties as cable technicians consisted of: (i) driving to Defendants' warehouse in the morning (usually 2+ a week) to pick up the supplies and equipment that they would require to complete their jobs; (ii) driving to customers' homes/businesses to install and/or repair equipment; (iii) checking their daily route and acknowledging each customer's job; (iv)

attending "Tech meetings" once a week at Defendants' warehouse;  (v) submitting paperwork of completed jobs, etc.

18. As cable technicians, Plaintiffs regularly worked more than forty (40) hours per workweek.  In fact, a typical work schedule required Plaintiffs to work more than 65 - 75 hours per week, with many weeks requiring them to work even more.  Plaintiffs worked six (6) days per week, 12 to 14 hours per day.

19. On days when they had "Tech meetings," Plaintiffs were required to arrive at the warehouse by 6:00 a.m.[2]  The meetings typically lasted 90 - 120 minutes.  After the meeting ended, Plaintiffs would stand in line to get the equipment they needed to complete their jobs, and would also return equipment collected in the field.  They would load their vans with the required equipment and then head out for the first job of the day.

20. In addition to the "Tech meeting" days, Plaintiffs would regularly go to Defendants' warehouse at least one (or more) times per week in order to get supplies/equipment.  On those days, Plaintiffs would arrive around 6:00 a.m., get their equipment, return equipment, load their van, and then drive to their first customer's home/office.  Defendants required Plaintiffs to arrive to their first customer's job no later than 8:00 a.m.

21. On "non-warehouse" days, Plaintiffs were required to log onto their computer system to check their assigned customer route for the day.  Defendants required Plaintiffs to "acknowledge" their jobs no later than 7:00 a.m.  Defendants required Plaintiffs to arrive to their first customer's job no later than 8:00 a.m.

22. Defendants did not allow Plaintiffs or the other technicians to "clock in" until they arrived to their first customer's home/office – despite the fact that they had started their workday no

---

[2] Plaintiff Ray had Tech meetings on Mondays; Plaintiff Quinney had tech meetings on Tuesdays.

less than an hour or two (or more depending on the location of the first job) beforehand.

23. Plaintiffs regularly ended their workday around 8:00 – 8:30 p.m. As such, Plaintiffs regularly worked 12 to 14-hour days.

24. Despite the fact that Plaintiffs worked these long hours, Defendants instructed Plaintiffs to report working fewer hours than they actually worked in order to reduce the number of overtime hours Defendants would be required to pay.

25. Plaintiff Quinney was terminated by Defendants in retaliation for confronting them about not getting paid for all of the hours he worked.

26. Plaintiff Ray quit his job with Defendants for the same reason: he was tired of working long hours and not getting paid for all of the overtime he was working.

27. Plaintiffs were not members of management. Neither they nor any other Class Member had authority to (nor did they): manage an enterprise, hire or fire other employees, set the pay rates of other employees, create policies or procedures to govern Defendants' employees, handle employee grievances, determine the type of equipment or materials that Defendants could use in their operations, plan and/or set Defendants' budget, enter into contracts on behalf of Defendants, or otherwise have operational control over Defendants' business operations and practices. Moreover, Plaintiffs and the cable technician Class Members did not perform office or non-manual work directly related to the management or general business operations of Defendants or their customers, nor did they exercise discretion and independent judgment with respect to matters of significance in the conduct of Defendants' businesses.

28. Plaintiffs and the Cable Technician Class Members were at all times "non-exempt" employees and eligible to receive overtime pay pursuant to Section 207 of the FLSA.

29. At all times relevant to this dispute, Defendants have been all been "joint employers"

of Plaintiffs and the Class Members within the meaning of the FLSA because all acted directly or indirectly in the interest of an employer in relation to Plaintiffs and the other Class Members. 29 U.S.C. § 203(d). Moreover, the Defendants are not completely disassociated with respect to the employment of Plaintiff and the Class Members and they all share control of Plaintiffs and the Class Members. 29 C.F.R. § 791.2 (2000). Defendants are owned and/or operated by the same individuals, and the way in which Defendants actually handle the business relationship as it pertains to Plaintiffs and the Class Members demonstrates that they all act as joint employers.

30. By way of example, each Defendant: (i) had the power to discipline and/or terminate Plaintiffs and the Class Members, (ii) regularly supervised and controlled work schedules and conditions of employment for Plaintiffs and Class Members, (iii) determined the rate and method of payment of wages and commissions, (iv) paid Plaintiffs and Class Member wages and made deductions to his wages, and (v) maintained employment records of Plaintiffs and Class Members.

31. In addition, Defendants failed to pay Plaintiffs and the Class Members the correct overtime rate of pay for hours worked in excess of forty (40) in a workweek. The FLSA required Defendants to include all remuneration paid to Plaintiffs and the Class Members when determining the employees' "regular rate of pay." 29 U.S.C. § 207(e). The commission and/or piece/job rate payments, as well as the hourly pay paid for Tech meetings, and monies paid for selling Protection Plans to customers – all were required to be included in Plaintiffs' total remuneration for purposes of determining the "regular rate" of pay. Once the regular rate of pay is determined, Plaintiffs and the Class Members are entitled to overtime wages calculated at time and a half their regular rate of pay for all hours worked each week in excess of forty (40) hours. Moreover, Defendants are not entitled to utilize the fluctuating work week (FWW) method of pay when determining the regular rate of pay for Plaintiffs and the Class Members because the amount of compensation it paid to them varied

based on the amount of time worked. Moreover, there was no clear mutual understanding or agreement between Defendants and Plaintiffs or the Class Members that they would be paid using the FWW and how that method works, nor did Defendants pay them a fixed rate.

32. Defendants also failed to pay Plaintiffs and the Class Members for all hours worked. Specifically, Defendants fail to pay for the time spent by Plaintiffs and the Class Members for duties and responsibilities required of them, including the time spent picking up supplies and equipment from Defendants' warehouse, waiting in line at the warehouse to pick up/turn in supplies and paperwork, travel time to the first job of the day, and time spent attending meetings, among other things.

### COLLECTIVE ACTION ALLEGATIONS

33. Plaintiffs bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all other persons employed by Defendants as a cable technician within three (3) years from the filing of this suit who, like Plaintiffs, (i) have not been compensated the correct overtime rate of pay (because not all remuneration was included in the regular and overtime rate of pay), and/or (ii) have not been paid for all hours worked.

34. Defendants classify and pay all of its cable technicians in the manner described above. In this regard, Defendants maintained a common pay practice or policy and the Class Members are similarly situated to Plaintiffs.

35. Defendants' cable technicians all perform the same essential job functions and duties notwithstanding the fact that one employee might have more tenure, experience, or require less supervision than another employee in the same or similar position. In this regard, the Class Members are similarly situated to Plaintiffs.

36. Although the exact amount of damages may vary among individual Class Members,

the damages for each individual can easily be calculated using the same methodology and formula.

37.     Defendants possess the names and addresses of all Class Members in their records. The Class Members should be allowed to receive notice about this lawsuit and given an opportunity to join. Like Plaintiffs, these similarly situated workers are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, and other damages.  Therefore, notice is appropriately sent to the following class:

> "All of Defendants' current and former Cable Technicians who worked for Defendants during any workweek between November 11, 2016 and up to the time notice of the lawsuit is provided."

### CAUSES OF ACTION

38.     Plaintiffs incorporate the allegations in the preceding paragraphs.

39.     Defendants failed to pay Plaintiffs and the Class Members appropriate overtime wages required by the FLSA for all hours worked.

40.     In addition, Plaintiffs and the Class Members were not paid the correct overtime rate of pay when they worked more than forty (40) hours in a workweek because the overtime rate of pay paid to them did not include all of the remuneration paid to them in the calculation of their regular (or overtime) rate of pay.  Defendants' failure to pay Plaintiffs and the Class Members the correct overtime rate of pay violated the FLSA.

41.     Defendants' failure to pay overtime wages to Plaintiffs and the Class Members in accordance with the FLSA was willful as that term is defined by Section 255(a) and was not based on a good faith belief that its conduct complied with the FLSA.  Therefore, the three (3) year statute of limitations period applies to Plaintiffs' and the Class Members' damages in this case.

42.     Plaintiffs and the Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek, an amount equal to all of their unpaid wages as liquidated

damages, as well as their reasonable and necessary attorneys' fees and costs of this action. 29 U.S.C. § 216(b).

## **RETALIATION**

43. Plaintiff Chantry Quinney was terminated on August 6, 2019 in retaliation for reporting/complaining about the fact that Defendants were not paying him for all of the hours he worked.

44. Section 215(a)(3) of the FLSA provides that it is a violation for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [this Act..." Internal complaints to an employer are also protected.

45. Based on the foregoing, Plaintiff Quinney is entitled to recover his lost wages and an equal amount as liquidated damages, reinstatement (or wages in lieu thereof), reasonable and necessary attorneys' fees, and costs.

## **JURY DEMAND**

46. Plaintiffs hereby demand a trial by jury.

## **PRAYER**

Plaintiffs respectfully request that judgment be entered against GOODMAN NETWORKS, INC. and MULTIBAND FIELD SERVICES, INC., jointly and severally, awarding them and all similarly situated employees:

 a. Overtime compensation for all hours worked in excess of forty (40) per week at the rate of one and a half times their regular rate of pay;

 c. An equal amount as liquidated damages;

 d. Reasonable and necessary attorneys' fees, costs, and expenses of this action; and

 e. Such other and further relief as may be required by law.

In addition, Plaintiff Chantry Quinney respectfully request that judgment be entered against GOODMAN NETWORKS, INC. and MULTIBAND FIELD SERVICES, INC., jointly and severally, awarding him:

    a.     Lost wages on account his wrongful termination;

    c.     An equal amount as liquidated damages;

    d.     Reasonable and necessary attorneys' fees, costs, and expenses of this action; and

    e.     Such other and further relief as may be required by law.

Respectfully submitted,

**DEBES LAW FIRM**

By: _____
*/s/ Robert R. Debes, Jr.*
ROBERT R. DEBES, JR.
bdebes@debeslaw.com
Texas Bar No. 05626150
5909 West Loop South, Suite 510
Houston, Texas 77401
Telephone: (713) 623-0900
Facsimile: (713) 623-0951

**COUNSEL FOR PLAINTIFFS**